# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAXTECH CONSUMER PRODUCTS, LTD., AND INSTY-BIT LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 18-CV-1304<br>)<br>) Judge John J. Tharp, Jr. |
| CHERVON NORTH AMERICA INC., TECHTRONIC INDUSTRIES CO. LTD., MILWAUKEE ELECTRIC TOOL CORPORATION, AND TECHTRONIC POWER TOOLS TECHNOLOGY LIMITED, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maxtech Consumer Products, Ltd. ("Maxtech") and defendant Chervon North America, Inc. ("Chervon") entered into a joint venture under which Chervon agreed to sell products using Maxtech's intellectual property. That joint venture fell apart, however, shortly after Chervon informed Maxtech that the purposes of the joint venture could no longer be accomplished and that all joint venture projects would "be suspended." Maxtech filed suit alleging that Chervon wrongfully terminated the joint venture. Chervon now moves to dismiss Maxtech's amended complaint, arguing that Maxtech conflated its breach of contract and anticipatory repudiation theories of relief and failed to state a claim under either theory. But it is Chervon, not Maxtech, that has conflated applicable legal standards, specifically the pleading standards under state and federal law. Federal pleading standards govern here, and under those standards Maxtech has stated a plausible claim for relief. Chervon's motion to dismiss the amended complaint is therefore denied.

## BACKGROUND[1]

Maxtech designs, manufactures, and owns intellectual property for hand tools and power tool accessories. On January 6, 2017, Maxtech entered into a Joint Venture Agreement with Chervon under which Maxtech granted Chervon an exclusive license to manufacture and sell power tools and accessories using Maxtech's intellectual property, including U.S. Patent No. 6,561,523 B1 (the "'523 patent"). First Supplement to Chervon's Mot. to Dismiss, Ex. A, Joint Venture Agreement, ECF No. 28-1.[2] Chervon and Maxtech agreed to participate in the joint venture for a term of ten years unless it was terminated earlier in accordance with the terms of the Joint Venture Agreement. Chervon was required under the Joint Venture Agreement to pay Maxtech a substantial licensing fee in two equal installments, with the first installment to be paid immediately and the second to be paid by March 2018. Chervon was also required to provide sales and production services for the joint venture, pay Maxtech a royalty on net sales, share a portion of its profits with Maxtech, and keep the books of account for the joint venture. If a party breached the Joint Venture Agreement and did not cure the breach within sixty days (or an otherwise reasonable time) of receiving notice of the breach, then the non-breaching party could terminate the Agreement.

Sometime after Maxtech and Chervon executed the Joint Venture Agreement, Chervon entered into a settlement agreement in unrelated litigation involving two other companies, one of which was Techtronic Industries Co. Ltd. ("TTI"). That settlement agreement allegedly required

---

[1] Facts alleged in the amended complaint are "taken as true and considered in the light most favorable to" Maxtech for purposes of the Court's ruling on the motion to dismiss. *See Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018).

[2] Although the Joint Venture Agreement was not attached to Maxtech's amended complaint, the parties agree that it may be considered when ruling on Chervon's motion to dismiss. *See* Pl. Maxtech's Opp'n to Chervon's Mot. to Dismiss ("Resp.") 3–4, ECF No. 32.

Chervon to "abandon its right to exclusivity on the '523 patent and related technology, a right which was a key part of the Joint Venture Agreement." Am. Compl. ¶ 24, ECF No. 11.[3] Accordingly, on January 4, 2018, Chervon's President and CEO Bill Boltz sent an email to Maxtech's CEO Kailash Vesudeva stating in relevant part:

> According to the recent settlement agreement between TTI and Chervon, Chervon is required to provide a copy of Section 22 of the agreement to Maxtech.
>
> . . .
>
> With respect to the notice that needs to be provided to Maxtech by January 6th, regarding changes to our business agreement, Chervon is making the following changes through this notice to modify our current agreement.
>
> 1. All current Chervon and Maxtech projects will be suspended and the monthly service fee will not be paid after the first 12 months have been completed.
>
> 2. Chervon will provide consent that Maxtech may revoke the termination of their license agreement with TTI and TTI may continue as a non-exclusive licensee under the Intsy-Bit license through the duration of all Intsy-Bit Patent Rights.
>
> 3. Since the original purpose of the exclusive license arrangement between Chervon and Maxtech cannot be achieved, Chervon is now proposing the following 2 options:
>
>    1. **Option 1**: Chervon will pay the second . . . installment to Maxtech, in exchange, Maxtech will pay to Chervon the lump sum royalties received from TTi for the future

---

[3] The amended complaint provides some context for these communications concerning the future of the Joint Venture Agreement. Maxtech alleges that although the TTI litigation with Chervon had nothing to do with the '523 patent, TTI engineered this settlement to preserve its access to the '523 patent technology, which it had previously enjoyed through a licensing agreement it had with Maxtech's affiliate, Insty-Bit LLC ("Intsy-Bit"). TTI's access to the '523 technology was threatened by Insty-Bit's revocation of that licensing agreement and the advent of the Maxtech-Chervon joint venture agreement, which provided an exclusive license to use the '523 patent in connection with the manufacture of power tools. In short, the complaint alleges that, in order to maintain its access to the '523 patent technology, TTI somehow "coerced" Chervon to blow up the joint venture agreement. Am. Compl. ¶ 22.

3

>  license till the end of duration of the patents or the end of agreement between Chervon and Maxtech, whichever is earlier.
>
> 2. **Option 2**: Maxtech will keep all lump sum and royalties received from TTi for the future license, while Chervon will not pay the second . . . installment.
>
>  If Maxtech will agree to either option, Chervon will not claim back the first [installment] paid last year.

Mot. to Dismiss, Ex. B, Email from Boltz to Vasudeva dated Jan. 4, 2018, ECF No. 28-2, PageID # 142.[4]

On February 6, 2018, Vesudeva met with Boltz in an effort to encourage Chervon to honor its obligations under the Joint Venture Agreement. At that meeting, Boltz allegedly "confirmed that Chervon considered its relationship with Maxtech over and would not honor the Joint Venture Agreement 'based on the TTI settlement.'" Am. Compl. ¶ 26. Maxtech filed suit shortly thereafter.[5] Chervon now moves to dismiss Maxtech's amended complaint, and Maxtech responds that it has stated a plausible claim under applicable federal pleading standards. Maxtech also alleges through its opposition brief—and Chervon does not dispute—that after Maxtech filed its amended complaint, Chervon failed to pay the second installment due per the Joint Venture Agreement. Resp. 1–2, ECF No. 32.

---

[4] Maxtech contends that the Court should not consider this email when ruling on the motion to dismiss. Resp. 5, ECF No. 32. But "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Maxtech quotes from the email in its amended complaint, *see* Am. Compl. ¶ 25, and alleges that the email is one of two interactions between Chervon and Maxtech that give rise to its claim.

[5] Insty-Bit was originally a plaintiff as well, but its claims were directed to TTI, Milwaukee Electric Tool Corp., and Techtronic Power Tools Technology Ltd. All of the claims against those defendants were voluntarily dismissed. ECF No. 36. Maxtech's claim against Chervon is the only remaining claim in the case.

**DISCUSSION**

**I.     Complaints plead claims not legal theories.**

To survive a motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The complaint must be viewed in the light most favorable to the plaintiff, and all possible inferences must be drawn in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

A plaintiff need not set forth any legal theory in its complaint. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018). It follows that "specifying an incorrect theory is not a fatal error," *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011), and neither is "using the wrong name to identify a theory," *Volling*, 999 F. Supp. 2d 991, 1006 (N.D. Ill. 2013). In reviewing a motion to dismiss, "the critical question is whether the plaintiffs have stated a plausible claim for relief under some recognized legal theory, not whether they have properly labeled that theory." *Volling*, 999 F. Supp. 2d at 997. A plaintiff "cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all." *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999). "Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead ***claims*** rather than facts corresponding to the elements of a legal theory." *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017) (emphasis in original); *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("Identifying legal theories may assist defendants and the court in seeing how the

5

plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules.").

Chervon is therefore off-base in asserting that Maxtech's claim fails because it does not plead facts supporting each element of either a breach of contract or anticipatory repudiation cause of action. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); *see also Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017) ("Because complaints need not identify the applicable law, it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each.") (internal citations omitted). Complaints in federal court "do not need to match facts to 'elements' of a legal theory." *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006) (citing *Bartholet v. Reishauer A.G. (Zürich),* 953 F.2d 1073, 1078 (7th Cir. 1992)). "Matching facts against legal elements comes later," after the motion to dismiss stage. *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Chervon's reliance on the more strenuous fact pleading requirements of Illinois state courts is therefore misplaced. *See Hefferman*, 467 F.3d at 599 ("The Federal Rules of Civil Procedure apply to all cases filed in federal court, no matter what the basis of subject matter jurisdiction."); *see also United States v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 827 (N.D. Ill. 2007) ("The defendants' reliance upon cases decided by Illinois courts is misplaced, because those cases analyze the sufficiency of complaints subject to the more strenuous fact pleading requirements of state court."); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1112 (Ill. 2004) (distinguishing fact pleading from notice pleading). Under the federal rules, Maxtech's

obligation is simply to plead facts that establish a plausible claim for relief, not to map fact allegations to the elements of a specific legal theory.

**II.     Maxtech states a plausible claim for relief.**

The gist of Maxtech's amended complaint is that Chervon unjustifiably failed to honor obligations it agreed to undertake in the Joint Venture Agreement. The parties agree that Illinois substantive law applies, *see* Resp. 7 n.2, and Illinois provides a number of legal theories that plausibly support a claim to relief premised, as is Maxtech's claim, on allegations of an unjustified refusal to honor commercial and professional commitments. Whether that claim is analyzed under a theory of breach of contract or anticipatory repudiation does not matter to the question of whether Maxtech has stated a plausible claim; even if a party to a contract has not failed to perform any current contractual duties, that party's unequivocal expression of its intent not to perform its future contractual duties may amount to an anticipatory breach. *In re County Treasurer and ex Officio County Collector of Kane County, Ill.*, 118 N.E.3d 659, 670 ¶ 39 (Ill. App. Ct. 2018).[6] And Maxtech's use of the word "repudiation" in its complaint to describe Chervon's wrongful withdrawal from the Joint Venture Agreement does not preclude Maxtech from arguing that the withdrawal amounted to a current breach. *See Volling*, 999 F. Supp. 2d at 1006 ("[P]laintiffs are not required to set forth *any* legal theories in their complaint, and there is no penalty for invoking the wrong one(s), or using the wrong name to identify a theory.") (emphasis in original). Maxtech

---

[6] There are other potentially viable theories on which Maxtech's claim might survive as well. Aside from theories of breach of contract and anticipatory repudiation, Maxtech's complaint would likely also survive under a theory of wrongful dissociation from the joint venture partnership. Where a partnership has been entered for a definite term, a partner is liable for wrongful dissociation if the partner withdraws from the partnership by express will before expiration of the term of the partnership. *See* 805 ILCS 206/602(b)-(c). Chervon has not disputed that Maxtech and Chervon were engaged in a joint venture partnership under Illinois law or that Maxtech's amended complaint states a claim under a wrongful dissociation theory.

alleges that Chervon's settlement with TTI made it impossible for Chervon to comply with its obligations under the Joint Venture Agreement, and that Chervon made as much clear to Maxtech when Chervon unequivocally renounced those obligations on January 4 and February 6, 2018. Regardless of the theory under which Maxtech's claim is analyzed, Chervon's alleged actions in refusing to carry forward with the venture, if true, contravened legal duties owed to Maxtech arising from the Joint Venture Agreement, plausibly entitling Maxtech to relief.

Chervon focuses on the two options Boltz listed under the final bullet point of his January 4, 2018 email to argue that Boltz was merely proposing a modification of the Joint Venture Agreement and asking if Maxtech would agree. While a mere suggestion to modify a contract may not amount to anticipatory repudiation, *see Truman L. Flatt & Sons Co. v. Schupf*, 649 N.E.2d 990, 994 (Ill. App. Ct. 1995), Maxtech has plausibly alleged that Chervon was not merely proposing a modification to the Agreement. Chervon ignores the prior paragraphs of that email, in which Boltz wrote that "Chervon *is* making the following changes through this notice to modify our current agreement," that "[a]ll current Chervon and Maxtech projects *will be suspended* and the monthly service fee *will not be paid* after the first 12 months have been completed," and that "the original purpose of the exclusive license arrangement between Chervon and Maxtech *cannot* be achieved." Mot. to Dismiss, Ex. B, Email from Boltz to Vasudeva dated Jan. 4, 2018, ECF No. 28-2, PageID # 142 (emphasis added in each instance).

Those statements were not made conditional based on any response from Maxtech. And it makes sense that those statements were not framed as mere proposals. Chervon had entered into the TTI settlement that allegedly required Chervon to abandon its right to exclusivity on the '523 patent, which frustrated "a key part of the Joint Venture Agreement." Am. Compl. ¶ 24. It is reasonable to infer that Boltz was proposing options for the parties to move forward after

8

Chervon's breach, rather than merely proposing modifications to preserve the Agreement, given that the joint venture was no longer viable in light of Chervon's settlement with TTI.

Chervon contends that Maxtech has not alleged a specific duty or contractual provision that Chervon breached, but fairly construed (and of course the plaintiff is entitled to all reasonable inferences at this stage) Maxtech has alleged that Chervon breached *all* of the duties it incurred when it entered into the Joint Venture Agreement, because it wrongfully withdrew from the joint venture altogether. The breach of obligations imposed by the Joint Venture Agreement is implicit in Boltz's own statements. *See* Mot. to Dismiss, Ex. B, Email from Boltz to Vasudeva dated Jan. 4, 2018, ECF No. 28-2, PageID # 142 (stating that the purpose of the Joint Venture Agreement "cannot be" achieved, Chervon "is" making changes to the Joint Venture Agreement, projects "will be" suspended, and the monthly service fee "will not be" paid). Chervon's obligations included providing several services to the joint venture, including providing "sales channels and sales organization" and a "production, purchasing, quality and operations team," as well as "preparing all orders for on-time shipment." Joint Venture Agreement ¶ 8.02. Chervon was also required to pay a royalty on net sales, share profits with Maxtech, and keep the books of account for the joint venture. And according to Boltz, Chervon wasn't going to deliver on these promises.

Chervon's wrongful termination of the Joint Venture Agreement was reinforced, Maxtech plausibly alleges, through the February 6, 2017 encounter between Boltz and Vesudeva. Chervon contests Maxtech's allegation that Boltz told Vesudeva during that encounter that "Chervon considered its relationship with Maxtech over and would not honor the Joint Venture Agreement . . . ." Am. Compl. ¶ 26. Because Maxtech placed quotation marks around the final words of that sentence ("based on the TTI settlement") but not around the preceding words, Chervon contends that the unquoted words should not be credited. But allegations in a complaint

do not rise or fall on such technical niceties. *See Christensen v. County of Boone, IL*, 483 F.3d 454, 458 (7th Cir. 2007) ("Together, [Federal Rules of Civil Procedure 8(a) and 12(b)(6)] ensure that claims are determined on their merits rather than on pleading technicalities."). A plaintiff must simply "give enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010), which is a burden that can be met by alleging the gist of a statement rather than a verbatim quote. Requiring that statements be quoted verbatim rather than summarized would likely run afoul of Federal Rule of Civil Procedure 8's mandate that complaints include "a ***short and plain*** statement of the claim showing that the pleader is entitled to relief" (emphasis added), and would effectively close the doors of the courthouse to those plaintiffs who don't make a habit of being accompanied by a stenographer.

Finally, the provision of the Joint Venture Agreement that allows a non-breaching party to terminate the Agreement after a notice-and-wait period does not doom Maxtech's claim either. *See* Joint Venture Agreement ¶ 10.02. That provision provides a mechanism for terminating the Joint Venture Agreement in the event of a breach, but it does not preclude a party from filing suit after an alleged breach.

\*    \*    \*

For the reasons stated above, Chervon's motion to dismiss the amended complaint, ECF No. 21, is denied.

Dated: July 1, 2019

John J. Tharp, Jr.
United States District Judge